**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IKEMEFUNA STEPHEN NWOYE,<br>*Plaintiff*,<br>v.<br>SIDLEY AUSTIN LLP,<br>*Defendant*. | Civil Action No. 25-1360 (RDM) |

**MEMORANDUM OPINION**

This suit is *pro se* Plaintiff Ikemefuna Stephen Nwoye's "fourth bite at the apple," Dkt. 15-16 at 6, pursuing claims alleging that Defendant Sidley Austin LLP ("Sidley Austin"), in concert with or on behalf of President Barack Hussein Obama and Michelle Obama ("the Obamas"), denied him just compensation and recognition for the intellectual contributions he made to the "Africa Asia Pro Bono" program while externing at the law firm 12 years ago.

This case follows on the tail of Plaintiff's prior case in the United States District Court for the Southern District of New York. *See generally Nwoye v. Obama*, No. 22-cv-1791 (S.D.N.Y. 2022) ("*Nwoye I*"). In that case, Plaintiff asserted claims for unjust enrichment, breach of contract, and quantum meruit against the Obamas. *See* Dkt. 15-3 (*Nwoye I* Am. Compl.). The Southern District of New York dismissed the claims against the Obamas with prejudice twice. *See* Dkts. 15-6 & 15-16. The first time, the Second Circuit vacated the dismissal and remanded the case to the district court based on a procedural rule in the Second Circuit that requires the district court to provide *pro se* litigants with notice and an opportunity to be heard before *sua sponte* dismissal. *See* Dkt. 15-8. On remand, the Southern District of New York issued a show cause order, requiring Plaintiff to show cause "why the case should not be

dismissed as frivolous or for failure to state a claim." Dkt. 15-4 at 4; Dkt. 15-9. In response, Plaintiff sought leave to file a second amended complaint, naming Sidley Austin as an additional defendant and asserting claims against the law firm for "principal/agent relationship," unjust enrichment, breach of contract, and quantum meruit. *See* Dkt. 15-10 at 28–33 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 30–54). The Southern District of New York dismissed Plaintiff's operative complaint with prejudice and denied leave to amend the complaint to add Sidley Austin as a defendant, concluding that Plaintiff's complaint was time-barred and failed to state a claim. *See* Dkt. 15-16. The Second Circuit affirmed the second dismissal and denial of leave to amend, *see* Dkt. 15-19, and the Supreme Court denied Nwoye's petition for a writ of certiorari, *see* Dkt. 15-20; *Nwoye v. Obama*, No. 23-1262 (U.S. Oct. 7, 2024).

Seven months later, Plaintiff filed this action, alleging that Sidley Austin has engaged in deceptive advertising by denying him recognition and compensation for the contributions he made to the "Africa-Asia Pro Bono Program" while externing at the law firm 12 years ago. Plaintiff further claims that Defendant deliberately spoliated relevant evidence by taking down online publications demonstrating its relationship with the Obamas and the lack of recognition given to Plaintiff regarding the Africa-Asia Pro Bono Program. Plaintiff seeks an injunction requiring recognition of his contributions on Sidley Austin's website and compensatory damages for his injuries under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and under the D.C. common law cause of action for spoliation. *See* Dkt. 1 at 16–19 (Compl. ¶¶ 30-41 & Prayer).

Sidley Austin's motions to dismiss Nwoye's complaint in its entirety, *see* Dkt. 15, and for sanctions pursuant to Federal Rule of Civil Procedure 11, *see* Dkt. 16, are now before the Court. For following reasons, the Court will **GRANT** the motion to dismiss and will **DENY** the motion for sanctions.

# I. BACKGROUND

## A. Factual Background

The following factual allegations are taken from Plaintiff's complaint, *see* Dkt. 1, which the Court accepts as true for the purpose of resolving the pending motion to dismiss, *see Gordon v. U.S. Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015).

Nwoye is a Nigerian citizen currently residing in Washington, D.C., who is licensed to practice law in Nigeria. Dkt. 1 at 2–3 (Compl. ¶¶ 1–2). He obtained his LL.M. degree from New York University ("NYU"). *Id.* at 3 (Compl. ¶ 2). Sidley Austin is a multinational law firm headquartered in Chicago, Illinois. *Id.* (Compl. ¶ 3). In September 2013, while completing his LL.M. at NYU, Nwoye applied for and was accepted to participate in Sidley Austin's Africa-Asia Agricultural Enterprise Pro Bono Program ("the Program"), an initiative that, according to Nwoye, the Obamas were "very keen on." *Id.* at 5, 9 (Compl. ¶¶ 8, 15). Between October 2013 and May 2014, Nwoye worked on multiple projects within the Program, including "representing several Nigerian Agricultural Cooperatives in negotiations with private sector investors for investments in agricultural processing facilities." *Id.* at 5 (Compl. ¶ 9). His specific responsibilities included "drafting and reviewing some provisions of the legal and financing documentation required for the transaction and also the provision of legal expertise and rendering of opinions on applicable Nigerian regulatory and corporate laws." *Id.* at 5–6 (Compl. ¶ 10). Nwoye alleges that his work resulted in "framework agreement(s) for future private-sector investment" in similar facilities and a checklist for best practices regarding securing land titled in various African countries. *Id.* at 6–7 (Compl. ¶¶ 10–11). He asserts that these projects were widely successful and allowed Sidley Austin to carry out subsequent, similar projects. *Id.* at 8 (Compl. ¶ 13).

Despite that success, however, Sidley Austin's brochures, advertising, webpages, and promotional materials make "no mention of the names" or otherwise recognize Nwoye or any of the other individual Nigerian legal practitioners who "worked on the various projects and made them a tremendous success." *Id.* at 7–8 (Compl. ¶ 12). Instead, Sidley Austin's attorneys, specifically, a partner named Neil Horner, received (and continue to receive) credit for the Program and its achievements. *Id.* at 8 (Compl. ¶ 13).

At the conclusion of Nwoye's externship, Horner represented that the firm "would like to have [Nwoye] on their team," and Horner asked Nwoye to "inform him" when he concluded his training at NYU. *Id.* at 8–9 (Compl. ¶ 14). Nwoye maintained contact with Horner from 2014 through 2016. *Id.* at 8–11 (Compl. ¶¶ 14–19). In one such meeting in 2014, the two met and discussed the then-upcoming 2015 Global Entrepreneurship Summit, which was allegedly "a major signature engagement" and a "priority" for then-President Obama. *Id.* at 9–10 (Compl. ¶ 16). Horner also told Nwoye that then-President Obama was concerned about "systemic corruption in Africa and its impact on the [] Power Africa Initiative." *Id.* at 10 (Compl. ¶ 17). At the meeting, Horner asked Nwoye if he could connect the law firm with a "major private sector player" to participate in the Summit. *Id.* (Compl. ¶ 18). Horner decided to engage with an individual that Nwoye recommended. *Id.* Horner allegedly "promised to communicate . . . [Nwoye's] invaluable role to his Sidley team and the White House." *Id.* at 10–11 (Compl. ¶ 19).

Between August and October 2014, Horner helped Nwoye obtain an interview for an "associate position in the structured finance team" with Sidley Austin's New York office, but Nwoye did not ultimately receive a offer from the firm. *Id.* at 11–12 (Compl. ¶¶ 21–23). Subsequently, Horner advised Nwoye and discussed other options. *Id.* at 12 (Compl. ¶ 22). Horner eventually told Nwoye that "nothing came through from his Sidley team or importantly

[the Obamas] even up until 2017, when they both left the White House." *Id.* (Compl. ¶ 23). Nwoye maintained contact with Horner through 2021 in both a professional and social capacity. *Id.* at 12–13 (Compl. ¶ 24).

Nwoye alleges that he had "reasonable and legitimate business expectations . . . that the Defendant and/or [President] Obama . . . would be forthcoming with an invitation for a physical meeting or some form of compensation in the future" in recompense for his efforts on the Program and other projects. *Id.* at 11 (Compl. ¶ 20). He also alleges that Sidley Austin kept "all of the recognitions, benefits, profits (goodwill) and promotion" from his efforts "for themselves without paying any form of compensation." *Id.* at 13 (Compl. ¶ 25). He claims:

> It has been over eight (8) years since [President] Obama left office . . . and there ha[s] been a 2+ years litigation that spanned the entire Federal Court System from the Federal District Court, to the Courts of Appeal (Second Circuit) on two appeals and ultimately to the Supreme Court before Certiorari was denied on predominantly common law based claims. It is now obvious and clear that [the Obamas] through the then non-parties Sidley Austin . . . have fraudulently and surreptitiously obtained the benefits of the Plaintiff's intellectual inputs and efforts in the [Program and other projects], especially on (i) the advisory work on the legal framework for land tenure in some African countries specifically in Nigeria, (ii) the Power Africa Initiative, and (iii) the 2015 Global Entrepreneurship Summit.

*Id.* (Compl. ¶ 24). Plaintiff alleges that "various fiduciary relationship[s] . . . existed between" the Obamas and Sidley Austin. *Id.* at 13–14 (Compl. ¶ 25). He claims, however, that webpages that would prove the existence of those fiduciary relationships, as well as a Sidley Austin webpage promoting the Program, have been "COMPLETELY REMOVED" by Sidley Austin. *See id.*; *see also id.* at 7–8, 13–14, 17 (Compl. ¶¶ 12, 25, 37, 39).

**B. Procedural History**

Plaintiff initiated this action on May 5, 2025. *See id.* at 1 (Compl.). Because Plaintiff's prior action in the Southern District of New York (*Nwoye I*) is central to the present action and

the pending motions, the Court must rewind to 2022 and briefly recount the allegations and procedural history of that case.[1]

**1.**

Plaintiff brought suit President and Michelle Obama in the Southern District of New York on March 3, 2022. Dkt. 15-4 at 2. In an amended complaint, entered within a few days of the initiation of the action, *see id.*, he raised nearly identical factual allegations to those that he raises here concerning his externship with Sidley Austin from October 2013 to May 2014, his contributions to the Program, his continued interactions with Horner even after the conclusion of his externship, Sidley Austin's failure to hire him as an associate, his continued contact with Horner, and his expectation that the Obamas and/or Sidley Austin would compensate him or recognize him for his efforts on the Program and other projects. *See* Dkt. 15-3 at 5–12 (*Nwoye I* Am. Compl. ¶¶ 7–27). He alleged that the Obamas were "at all material times [the] disclosed principals" of Sidley Austin, that they decided to "keep all the recognitions, benefits, and profits from these ventures for themselves without paying for consultancy and advisory services," and that he is "entitled to recognition for his intellectual inputs and efforts . . . on all firm's publicity and advertisement documents including online platforms" as well as "monetary compensation

[1] For ease of reference, when referring to filings from *Nwoye I*, the Court will rely on and cite to the attachments to Defendant's motion to dismiss rather than the actual docket entries in *Nwoye I*. Sidley Austin requests that the Court take judicial notice of these attachments, and the Court will do so. *See generally* Dkt. 15-2. "[T]he court may take judicial notice of public records from other proceedings in deciding whether a complaint asserts a claim or issue barred by res judicata or collateral estoppel." *Yeager v. Nat'l Pub. Radio*, No. 20-cv-00755, 2021 WL 3510653, at *6 (D.D.C. Aug. 10, 2021) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)); *see also Ford v. Maryland Att'y Gen.*, No. 17-cv-2525, 2018 WL 5251742, at *3 (D.D.C. Oct. 22, 2018), *aff'd*, No. 18-7175, 2020 WL 1443537 (D.C. Cir. Mar. 12, 2020). Here, Nwoye concedes that Sidley Austin's attachments from the *Nwoye I* docket are "part of the official and public record of the Judiciary" and are "undisputed legal proceedings." Dkt. 17 at 8.

for the non-recognition of his enormous contributions." *Id.* at 11–12 (*Nwoye I* Am. Compl. ¶¶ 24–25) (emphasis omitted).

Based on those allegations, the amended complaint in *Nwoye I* asserted claims for unjust enrichment, breach of contract, and *quantum meruit*. Dkt. 15-3 at 13–16 (*Nwoye I* Am. Compl. ¶¶ 29–48). As for the unjust enrichment claim, Nwoye alleged that he made "vital and invaluable intellectual contributions" to the Program, "which was generally known . . . as the [Obamas'] pet project." *Id.* at 13 (*Nwoye I* Am. Compl. ¶ 30). Because Nwoye did not receive compensation for "the benefits that [he] conferred," he sought both monetary compensation and an order requiring the Obamas, "through their lawfully designated agent [] Sidley Austin . . . [to] mention [] his full legal name" on promotional materials. *Id.* at 13–14 (*Nwoye I* Am. Compl. ¶¶ 33–35). As for the breach of contract claim, Nwoye asserted that he entered an "implied consultancy contract" with the Obamas "through their agent [] Sidley Austin" for the 2015 Global Entrepreneurship Summit and the Power Africa Initiative, that he performed his obligations under that contract, and that he is entitled to "10[] percent of the transactions [sic] sum." *Id.* at 14–15 (*Nwoye I* Am. Compl. ¶¶ 38–42). And, as for the *quantum meruit* claim, Nwoye alleged that he provided consultancy services to the Obamas "upon the request of . . . their agent [] Sidley Austin" regarding the two aforementioned projects, which the Obamas accepted without paying Nwoye the compensation (of more than $360 millions) that he "reasonably expected." *Id.* at 15–16 (*Nwoye I* Am. Compl. ¶¶ 43–48). Nwoye sought $360 million dollars in compensatory damages and an "[o]rder . . . directing the [Obamas] and their agent[] . . . Sidley Austin [] to state the full name of the Plaintiff as one of the Nigeria Legal Practitioner[s] that work[ed] on . . . the Sidley's [Program] on all promotional and advertising brochures online and documentary." *Id.* at 17–18 (*Nwoye I* Am. Compl. Prayer).

Nwoye failed to effect service on the Obamas, Dkt. 15-19 at 4 n.1; Dkt. 15-4 at 3, and, accordingly, they did not appear or answer the *Nwoye I* complaint. Notwithstanding that problem, Nwoye twice attempted to secure a default judgment against the Obamas. *See* Dkt. 15-4 at 3; *see, e.g.*, Dkt. 15-5 (Pl.'s *Nwoye I* Ex Parte Motion for Default). The clerk for the Southern District of New York denied the first request for a certificate of default due to Plaintiff's failure to serve, *see* Dkt. 15-4 at 3, and the district court *sua sponte* dismissed Nwoye's complaint before addressing the second request. *Id.* Specifically, the district court dismissed all claims against President Obama, holding that the actions for which Nwoye sought damages were "official acts of the Obama administration" and that the President was, accordingly, entitled to "absolute immunity from damages liability." Dkt. 15-6 at 2 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). The court concluded that Michelle Obama, as the First Lady, was likely covered by that immunity as well, *id.* at 3 (citing *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 904 (D.C. Cir. 1993), but also held that Nwoye failed to state any claims against her pursuant to Rule 12(b)(6), *id.* at 3 n.1. The district court concluded that it was proper to dismiss Nwoye's complaint *sua sponte* because Nwoye's claims were "frivolous" and "lack[ed] an arguable basis either in law or in fact." *Id.* at 3 (citation omitted).

Nwoye appealed that dismissal, *see* Dkt. 15-7, and the Second Circuit vacated the dismissal and remanded the action to the district court in light of Second Circuit procedural rule; in the Second Circuit district courts are generally required to provide *pro se* litigants with "notice and an opportunity to be heard" before they may dismiss even frivolous complaints. Dkt. 15-8 at 4–5. The Second Circuit noted that "an order to show cause why a complaint should not be

dismissed *sua sponte* for a stated reason, will typically suffice to provide notice and an opportunity to be heard." *Id.* at 5.

The district court then issued two orders to show cause, directing Nwoye to explain why this amended complaint should not be dismissed as frivolous or dismissed for failure to state a claim or as untimely. *See* Dkt. 15-9 at 3; Dkt. 15-4 at 4. In response, Nwoye sought leave to file a second amended complaint. *See* Dkt. 15-10 (*Nwoye I* Prop. 2d Am. Compl.); Dkt. 15-11. In his proposed second amended complaint, Nwoye sought to add Sidley Austin as a defendant and sought to allege that Sidley Austin, "at all material times to facts relevant in this dispute[,] was the intermediary or agent or contact or transacting party." Dkt. 15-10 at 7 (*Nwoye I* Nwoye Decl. in Support of Prop. 2d Am. Compl. ¶ 17); *id.* at 12–13 (*Nwoye I* Prop. 2d Am. Compl. ¶ 4). In all other respects, however, Nwoye's proposed second amended complaint include factual allegations that were nearly identical to those contained in his amended complaint. *See id.* at 14–28 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 8–29). In addition to asserting nearly identical unjust enrichment, breach of contract, and quantum meruit claims against all three defendants, *see id.* at 30–34 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 37–56), however, Nwoye also sought leave to assert a claim for "principal/agent relationship," which posited that he "entered into a direct legal relationship (written contract) with [Sidley Austin] acting for themselves or/and on behalf of the" Obamas, and "entered into an oral contract . . . for legal advisory and consultancy services [on the 2015 Global Entrepreneur Summit and Power Africa Initiative for the Obamas] through their agent and intermediary [Sidley Austin] acting on its apparent authority given the existing fiduciary relationship," they had, *id.* at 28–29 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 31, 33). Nwoye also sought leave to assert a claim of "equitable estoppel" against Sidley Austin. *Id.* at 29 (*Nwoye I* Prop. 2d Am. Compl. ¶ 35). Once again, he sought $360 million in compensatory

damages and an order directing defendants, "particularly [Sidley Austin]," to state his name on "all promotional and advertising brochures" for the Program. *Id.* at 34–35 (*Nwoye I* Prop. 2d Am. Compl. Prayer).

A magistrate judge then issued a report and recommendation concluding that Nwoye's first amended complaint should be dismissed with prejudice because his claims against the Obamas were frivolous in light of their immunity for the official actions that Nwoye sought to challenge and, independently, because Nwoye failed to state a claim against either of the Obamas. Dkt. 15-14 at 16–28. As to Nwoye's proposed second amended complaint against Sidley Austin, the magistrate judge recommended denying Nwoye's motion for leave to amend because the claims were duplicative of those against the Obamas, the breach of contract and equitable estoppel claims failed to state a claim, and the unjust enrichment and quantum meruit claims were time-barred. *Id.* at 29–35. He concluded that all of the claims against the Obamas should be dismissed with prejudice because those claims could not be cured by further amendment. *Id.* at 36. The magistrate judge noted, however, that it was possible that language *might* exist in a written contract between Nwoye and Sidley Austin, which was not before him, that *might* represent an agreement to provide Nwoye with post-externship employment, compensation, or recognition. He accordingly recommended providing Nwoye a further opportunity to cure that claim, even though the proposed second amended complaint failed to state a breach of contract claim against Sidley Austin. *Id.* at 29, 36–37.

Over Nwoye's objection, the district court adopted the report and recommendation in almost all respects. Dkt. 15-16 at 4. In one respect, however, the district court took an even less favorable view of Nwoye's motion for leave to amend: it concluded that granting leave to amend the breach of contract claim against Sidley Austin would be futile. *Id.* at 4–6. Specifically, the

district court held that "the allegations regarding Sidley's purported breach of contract remain wholly conclusory" and that the alleged facts gave the Court no grounds to "infer the scope of the agreement," "the compensation . . . that Plaintiff was to receive," or that any alleged offer was "supported by consideration." *Id.* at 5–6. Because "none of the three complaints that [Plaintiff] has filed or has proposed to file has stated a viable claim," the district court declined to give Plaintiff "a fourth bite at the apple." *Id.* at 6. It dismissed Plaintiff's operative complaint with prejudice, denied leave to file the second amended complaint, and entered final judgment. *Id.* at 4; Dkt. 15-17.

Nwoye appealed both orders, *see* Dkt. 15-18 at 17 (arguing that both the "complaint and proposed second amended complaint" contained "justiciable . . . claims"), and, this time, the Second Circuit affirmed. The court held that the district court did not err in concluding that Nwoye's unjust enrichment and quantum meruit claims were untimely, that his breach of contract claim against the Obamas failed to state a claim, and that granting leave to file a breach of contract and equitable estoppel claim against Sidley Austin would be futile. Dkt. 15-19. Nwoye filed a petition for writ of certiorari, and the Supreme Court denied his petition. *See* Dkt. 15-20; *Nwoye v. Obama*, No. 23-1262 (U.S. Oct. 7, 2024).

**2.**

Within seven months of the conclusion of *Nwoye I*, Nwoye filed the pending action against Sidley Austin. *See* Dkt. 1 at 1 (Compl.). Nwoye's complaint in this action, with few exceptions, is a near-exact paragraph-by-paragraph recitation of the factual allegations contained in the (failed) amended complaint in *Nwoye I*. *See* Dkt. 15-22 (comparing factual allegations in the *Nwoye I* and present complaint). Indeed, only five paragraphs in Nwoye's current complaint lack a near-match to a paragraph found in the amended complaint in *Nwoye I*, two of which

pertain to Nwoye's spoliation claim, and the other three of which pertain to his communications with Sidley Austin after *Nwoye I* concluded. *Compare* Dkt. 1 at 8, 13–15 (Compl. ¶¶ 13, 25, 27–29), *with* Dkt. 15-3 (*Nwoye I* Am. Compl.).

Rather reviving the *Nwoye I* claims of unjust enrichment, breach of contract, and quantum meruit, however, the present complaint sets out two claims. In his first claim, which invokes Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Nwoye claims that Sidley Austin's "advertising on its website and various online and print media" on the Program "constitute use of a false designation of origin and misleading description and representation . . . that is likely to cause confusion, mistake[,] or deception . . . as to the joint venture and collaboration on the various projects" that existed between the parties. Dkt. 1 at 16 (Compl. ¶ 31). Plaintiff maintains that he is "entitled to recognition . . . on all firm's publicity and advertisement documents [related to the Program] . . . [and] monetary compensation for the non-recognition and infringing of his intellectual property right." *Id.* at 14 (Compl. ¶ 26). Plaintiff's second claim, which invokes D.C. common law regarding the reckless spoliation of evidence, *see id.* at 17 (Compl. ¶ 36), alleges that Sidley Austin removed or took down four webpages "relevant to establish the cause of action" in *Nwoye I* while that case was pending: one webpage promoting the Program and three other articles that demonstrate the "fiduciary relationship" between the Obamas and Sidley Austin, *id.* at 7–8, 13–14, 17 (Compl. ¶¶ 12, 25, 38, 39). Nwoye contends that the destruction of these pages has "significantly impaired [his] ability . . . to prove the potential civil action." *Id.* at 17 (Compl. ¶ 40).

Nwoye seeks relief nearly identical to what he sought in *Nwoye I*. *Compare* Dkt. 15-3 at 17–18 (*Nwoye I* Am. Compl. Prayer) *with* Dkt. 1 at 17–19 (Compl. Prayer). He seeks an order (1) enjoining Sidley Austin from engaging in deceptive representations of the Program and its

contributors; (2) requiring Sidley Austin to state his name on any material associated with his contributions to the Program and related projects; (3) enjoining Sidley Austin from "[d]estroying [or] removing" any "documentary evidence" relating to the Program and other projects on which his worked; and (4) requiring Sidley Austin to "disseminate corrective advertisement" that acknowledges its "violation of the law" and his contributions. *Id.* at 18–19 (Compl. Prayer). Nwoye also seeks "trebled" compensatory damages "and/or an award of 50% of all profits" derived from the Program, punitive damages, and costs of litigation. *Id.* at 19 (Compl. Prayer).

Sidley Austin moves to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. 15, and also moves for sanctions under Rule 11 on the grounds that the claims are frivolous, plainly barred by res judicata, and asserted for an improper purpose. *See* Dkt. 16-1. Nwoye opposes both motions. *See* Dkts. 17 & 19.

## II. ANALYSIS

### A. Motion to Dismiss

Nwoye's present complaint includes two counts: one under the Lanham Act, 15 U.S.C. § 1125, and the other under D.C. common law for reckless spoliation of evidence. *See* Dkt. 1 (Compl.). Sidley Austin contends that both claims are barred by res judicata and, in the alternative, that both fail as a matter of law. Dkt. 15-1 at 7. The Court concludes that Nwoye's Lanham Act claim is barred by res judicata and that his reckless spoliation claim fails as a matter of law.

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v.*

*District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citation modified). The Court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

"When res judicata bars a claim," the claim "is subject to dismissal under Rule 12(b)(6)." *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 45 (D.D.C. 2017) (citation modified). The affirmative defense of preclusion may be raised under Rule 12(b)(6) if the defense can be "established from the face of the complaint, matters fairly incorporated within it, and matters susceptible to judicial notice." *Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citation modified). When considering a motion to dismiss, courts may take judicial notice of "public records from other proceedings." *Hemphill v. Kimberly-Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220 (D.C. Cir. 2005) (citation modified)).

1. *Lanham Act Claim*

The Court begins with Nwoye's Lanham Act claim, and Sidley Austin's contention that that res judicata—specifically, claim preclusion—bars Nwoye from relitigating this claim. Dkt. 15-1 at 16–17. The Court agrees that the claim is precluded.

Under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981), and, as relevant here, "a final judgment forecloses successive litigation of the very same claim," *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation modified). Claim preclusion serves "to promote the finality of judicial determinations, to foster reliance on judicial decisions by minimizing the possibility of inconsistent decisions, to conserve judicial resources, and to spare adversaries the vexation and expense of redundant litigation." *Ramey v. Potomac Elec. Power Co.*, 580 F. Supp. 2d 48, 51 (D.D.C. 2008) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). A "subsequent lawsuit" is precluded "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).

There is no question that the Southern District of New York, which entered the final judgment at issue in *Nwoye I*, is a court of competent jurisdiction for purposes of res judicata. *See* Dkt. 17 at 16. The Court is also persuaded that the remaining three elements are satisfied on the facts of this case.

a. <u>Same Claims or Causes of Action</u>

The first element of res judicata— "an identity of the causes of action"—is satisfied "when the cases are based on the same nucleus of facts." *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (citation omitted). Two cases arise out of the same nucleus of facts if "the facts are related in time, space, origin, or motivation, [if] they form a convenient trial unit, and [if] their treatment as a unit conforms to the parties' expectations or business understanding and usage." *Apotex, Inc. v. FDA*, 393 F.3d 210,

217 (D.C. Cir. 2004) (citation modified). Here, the Lanham Act claim arises from the precisely the same transactions and occurrences alleged in *Nwoye I*.

The crux of Plaintiff's Lanham Act claim is that (1) he was an extern over 12 years ago in Sidley Austin's Program, which was important to the Obama Administration; (2) he continued communications with Horner after the formal conclusion of his externship and offered intermittent advice on two other projects that were important to the Obama Administration; (3) despite his contributions, he did not receive a job offer, compensation, or recognition for his efforts from either Sidley Austin or the Obamas; and (4) Sidley Austin's advertising and promotional materials for the Program is "misleading" because it does not represent the "joint venture and collaboration with [Nwoye]," constituting "intent to expropriate and [to] exploit [Nwoye's] goodwill and legal services" contributed to the Program. Dkt. 1 at 5, 7–8, 9–12, 16 (Compl. ¶¶ 8–9, 15, 12–20, 21–23, 31–34). Among other things, Plaintiff seeks (1) an injunction preventing Sidley Austin from engaging in "misleading" advertising that fails to recognize the role he played in the program and requiring Sidley Austin to "state [Nwoye's] full legal name" on promotional material, and (2) compensation for "using [Nwoye's] intellectual property/work product." *Id.* at 18–19 (Compl.).

*Nwoye I* arose from the exact same series of alleged events. All the causes of action raised in *Nwoye I*, moreover—unjust enrichment, breach of contract, *quantum meruit*, and equitable estoppel—were premised on the same wrong resulting from those same events, namely, the lack of recognition and compensation for Nwoye's contributions to the Program and two other projects. *See* Dkt. 15-3 at 5–12, 17–18 (*Nwoye I* Am. Compl. ¶¶ 7–27, Prayer); Dkt. 15-10 at 14–28, 34–35 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 8–29, Prayer). Indeed, the factual bases of both complaints are not just similar, but virtually identical: nearly every paragraph of

the present complaint has a near-exact analog in the *Nwoye I* complaints. *See* Dkt. 15-22 (comparing Nwoye's present complaint to the *Nwoye I* complaint).

Nwoye concedes that the "extant case . . . arose from the same transaction(s) that the Plaintiff and Defendant collaboratively worked on between 2014 and 2016." Dkt. 17 at 13. He asserts, however, that because *Nwoye I* was "premised on common law and equitable" claims and this action is instead "premised on [a] Federal Statute," that the two suits cannot be considered to arise from the same common nucleus of fact. Dkt. 17-1 at 3; Dkt. 17 at 10; *see also id.* at 13–14. "[P]laintiff's argument that res judicata does not apply because [the new suit] presents different legal claims is erroneous and demonstrates a fundamental misunderstanding of the principle underlying the doctrine of *res judicata*, which is that 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies.'" *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 191 (D.D.C. 2011) (quoting *Capitol Hill Grp.*, 569 F.3d at 490). "Claim preclusion may apply to theories advanced under different statutes, under common law and statute, or under the laws of different sovereigns." 18 Wright and Miller, Federal Practice and Procedure § 4411 (3d ed. Apr. 2026 update). As such, "claim preclusion bars subsequent complaints arising from the same set of facts, even if the complaints bring claims under different . . . legal theories." *Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 125 (D.D.C. 2014) (citation modified). That Nwoye now invokes different causes of action than the ones he invoked in *Nwoye I* is of no moment, given that he has filed a nearly identical complaint alleging nearly identical facts. *See, e.g.*, *RSM Prod. Corp.*, 800 F. Supp. 2d at 191–92 (D.D.C. 2011) (collecting cases and rejecting similar argument that the first element was unmet because "this case sounds in RICO conspiracy, not the state law claims which were asserted in New York").

The Lanham Act claim plainly arises from the same nucleus of facts at issue in *Nwoye I*.

b. Privity and Final Judgment on the Merits

The second and third elements, which are related for reasons explained below, are also satisfied here.

Sidley Austin posits that Nwoye's proposed second amended complaint in *Nwoye I*, which the Southern District of New York denied leave to file based on timeliness and futility, establishes that Plaintiff "himself treated Sidley as in privity with the Obamas." Dkt. 15-1 at 19. In particular, the complaint sought to add Sidley Austin as a defendant, alleged that the law firm was the Obamas' agent, and alleged that Sidley Austin was a "necessary party" to the suit. *Id.* Notably, the qualifying "final judgment on the merits" that Sidley Austin focuses on in its motion to dismiss was not the denial of leave to amend to add Sidley Austin as a party but, rather, the court's dismissal with prejudice of Nwoye's then-operative complaint against the Obamas. *See id.* at 20. In its reply brief, however, Sidley Austin clarifies that the denial of leave to amend in *Nwoye I* was a "necessar[y]" predicate to the dismissal with prejudice, and it contends that the district court resolved Plaintiff's proposed claims against Sidley Austin. Dkt. 20 at 7–8.

The Court agrees that the two orders issued by the Southern District of New York and affirmed on appeal—the dismissal of the operative complaint against the Obamas with prejudice and a denial of leave to amend to add Sidley Austin on futility grounds—"merge[d] into the final judgment," *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 430 (2026), and, in any event, ought not be treated as wholly separate occurrences. The Southern District of New York dismissed the then-operative complaint with prejudice and denied Plaintiff leave to amend to add claims against Sidley Austin in a single memorandum opinion. It did so, moreover, on the ground that Nwoye's existing claims against the Obamas and proposed claims against Sidley

Austin were either barred by presidential immunity, time-barred, or inadequately pled after three "bites at the apple." Dkt. 15-16 at 6. The district court then entered a single final judgment. *See generally* Dkt. 15-17. Both the dismissal and the denial of leave to amend were then affirmed on appeal. Dkt. 15-19. But even treating the two actions as distinct, as Nwoye requests, Dkt. 17 at 14–16, the Court concludes that Plaintiff's present action is barred. Plaintiff impermissibly seeks to relitigate the same claims that have been adjudicated by a final judgment on the merits against the same party or its privy.

The Court begins with the denial of leave to amend. "[D]enial of leave to amend on the merits precludes subsequent litigation of the claims in the proposed amended complaint," *Patton Boggs, LLP v. Chevron Corp.*, 825 F. Supp. 2d 35, 39 (D.D.C. 2011) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)), where "claims" are defined by "the same nucleus of fact regardless of the legal theory on which the plaintiff relied," *id.* at 41 n.6. The D.C. Circuit has held, in the context of claim-splitting, which it considers "a corollary to claim preclusion," that "denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *Steele v. United States*, 144 F.4th 316, 328 (D.C. Cir. 2025) (quoting *King v. Hoover Grp., Inc.*, 958 F.2d 219, 222–23 (8th Cir. 1992); *see also Casciani v. Town of Webster*, 501 F. App'x 77, 79–80 (2d Cir. 2012) (holding that denial of leave to amend "constitute[d] a final judgment sufficient to preclude any claims contained in the proposed amended complaint" where the proposed amendment was denied as futile "because it could not have withstood[] a motion to dismiss for failure to state a claim" (citation modified)). Here, the denial of leave to amend to add claims against Sidley Austin in *Nwoye I* was a decision on the merits because it was based both on timeliness and futility, *see* Dkt. 15-16 at 4–6. *See Steele*, 144 F.4th at 328; *Smalls*, 471 F.3d at 192 ("[D]ismissal on statute of limitations

grounds . . . [is] a judgment on the merits.") (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)).

Because the denial of leave to amend to add claims against Sidley Austin constitutes a final judgment on the merits, Sidley Austin is correct that it need not rely on its privity to the Obamas: Sidley Austin was the very party against whom Nwoye was denied leave to raise claim, and the district court's decision was premised on the futility of Nwoye's efforts to sue Sidley Austin. *See, e.g.*, *U.S. ex rel. Pentagen Techs. Int'l Ltd. v. United States*, No. 00-cv-6167, 2001 WL 770940, at *9 (S.D.N.Y. July 10, 2001) (denial of leave to amend to add new claims against new defendants on futility grounds was a judgment on the merits and barred second action raising same claims against those unadded defendants); *cf. RSM Prod. Corp.*, 800 F. Supp. 2d at 193–94 (dismissal of a complaint against non-appearing defendants for failure to state a claim precluded subsequent litigation raising the same claims against those parties); *Rasch v. Tyson Fresh Meats, Inc.*, No. C16-3006-LTS, 2017 WL 2219985, at *2, *5–6 (N.D. Iowa May 19, 2017) (raising no question whether the denial of leave to amend to add claims "against the non-Tyson defendants" because they "were futile" in the first action implicated the "same party" in a subsequent litigation seeking to raise the same claims "against the non-Tyson defendants"). And because the Court has already concluded that the Lanham Act claim arises from "the same nucleus of fact[s]" in his proposed second amended complaint against Sidley Austin in *Nwoye I*, *Patton Boggs, LLP*, 825 F. Supp. 2d at 41 n.6, all three elements of res judicata are satisfied.

Nwoye claims that "it [cannot] be logically argued that the parties are the same simply because the Defendant was named in a proposed amended complaint in the prior lawsuit that was not considered, determined, or granted by" the *Nwoye I* Court. Dkt. 17 at 14–15. He also contends that Sidley Austin was not formally "made a party" to *Nwoye I* "through the service of

court processes" or through "Rule 17." *Id.* at 16. These contentions are both factually and legally flawed. First, as explained, the Southern District of New York considered Nwoye's proposed second amended complaint on the merits and denied him leave to file that complaint because his proposed claims against Sidley Austin were time barred and otherwise futile. Second, Nwoye points to no caselaw requiring the "party," for res judicata purposes, to be one formally made a party pursuant to service or joinder in the first action—or even one that has been served in accordance with Rule 4. The Southern District of New York considered Plaintiff's proposed claims against Sidley Austin, and it held that they were meritless.

Under these circumstances, where Nwoye moved to amend his complaint to add Sidley Austin as a defendant and to assert claims against the law firm that turn on the exact same factual allegations at issue here, where the district court held that those claims were futile, and where the Second Circuit affirmed that decision, the Court need not decide whether Sidley Austin and the Obamas were in privity for purposes of the New York litigation. Rather, Nwoye sought to sue Sidley Austin itself, and his efforts to do so were rejected on the merits. But even if the Court were to disregard that substantive decision rejecting Nwoye's claims against Sidley Austin—in its distinct capacity—the Court will have little difficulty in concluding that the privity requirement is satisfied.

In general, "one in privity with another is said to be one 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" *Gresham v. District of Columbia*, 66 F. Supp. 3d 178, 192 (D.D.C. 2014) (quoting *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963)). This Court has held that the same interests are represented "where there is a close or significant relationship between successive defendants," *Ananiev v. Freitas*, 37 F. Supp. 3d 297,

310 (D.D.C. 2014) (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)), including when the two sets of defendants consist of "[m]embers of a conspiracy," *id.* (citation modified). Similarly, a final judgment against a principal or agent applies to the other "if the prior action concerned a matter within the[ir] agency." *Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzheinie'*, 172 F. Supp. 2d 79, 96 (D.D.C. 2001) (citation modified) (quoting *Major v. Inner City Prop. Mgmt., Inc.*, 653 A.2d 379, 381 (D.C. 1995)). "In accordance with this principle, courts have consistently held that res judicata applies to bar later suits against the principal or the agent where a final judgment has been rendered in a prior action involving the other party to the agency relationship and the two actions share a common nucleus of fact." *Herrion v. Children's Hosp. Nat. Med. Ctr.*, 786 F. Supp. 2d 359, 371 (D.D.C.), *aff'd*, 448 F. App'x 71 (D.C. Cir. 2011).

The Court need not linger on the question of privity because the core of Plaintiff's complaint, at each juncture, has rested on his allegations that Sidley Austin acted as an agent of the Obamas and mistreated him within the scope of that agency. *See* Dkt. 15-3 at 5, 13–15, 18 (*Nwoye I* Am. Compl. ¶¶ 6, 33, 38, 43) (alleging that Sidley Austin operated as an "agent" or "lawfully designated agent" of the Obamas); Dkt. 15-10 at 28–29 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 31, 33) (similar). The gravamen of Plaintiff's *Nwoye I* suit was that Sidley Austin, in concert with or on behalf of the Obamas, hired Plaintiff as an extern and continued to use his legal and consultancy services without offering a job, compensation, or recognition on Sidley Austin's promotional materials. *See generally* Dkt. 15-3 (*Nwoye I* Am. Compl.); *see also* Dkt.15-11 at 8 (Pl.'s motion for leave to file second amended complaint contending that Sidley Austin was a "necessary party" and "played" the "main role . . . in all four transactions implicated in this lawsuit").

Nwoye's present complaint, which, again, is nearly identical to his *Nwoye I* complaint, *see* Dkt. 15-22, alleges the same joint unlawful venture between Sidley Austin and the Obamas, *id.* at 9-13 (Compl. ¶¶ 15–25). The complaint's allegations demonstrate "a close or significant relationship between successive defendants," *Ananiev*, 37 F. Supp. 3d at 310, or the kind of conspiratorial or agent relationship with respect to the alleged misconduct that establishes the privity requirement. *See RSM Prod. Corp.*, 800 F. Supp. 2d at 194; *Herrion*, 786 F. Supp. 2d at 371; *Century Int'l Arms, Ltd.*, 172 F. Supp. 2d at 96; *Gambocz v. Yelencsics*, 468 F.2d 837, 841–42 (3d Cir. 1972); *Elbert v. Carter*, 903 F.3d 779, 783–84 (8th Cir. 2018); *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10–11 (1st Cir. 1988). Nwoye has repeatedly alleged that Sidey Austin and the Obamas were acting in privity with one another—and, indeed, that the key premise of his New York lawsuit—and he cannot now disavow what he alleged in New York and re-alleges here. Because Sidley Austin is—according to Nwoye—in privity with the Obamas, the preclusive effect of the dismissal of *Nwoye I* with prejudice (independent of the denial of leave to amend) applies with equal force to Sidley Austin. For that reason, the second and third res judicata requirements are satisfied, and Plaintiff's Lanham Act claim is precluded.

Nwoye had ample opportunity to litigate all of his claims and legal theories against the Obamas and Sidley Austin in *Nwoye I*; he failed to do so. "[T]he Court will not allow the plaintiff to re-litigate its previously dismissed claims by simply asserting a new legal theory and naming a party that could have been [and was] named in the earlier suit." *RSM Prod. Corp.*, 800 F. Supp. 2d at 194.

The Court will, accordingly, dismiss Nwoye's Lanham Act claim with prejudice.

2. *Spoliation Claim*

Sidley Austin maintains that Nwoye's spoliation claim is barred by res judicata as well.[2] *See* Dkt. 15-1 at 16–17, 28. The Court is unpersuaded. Res judicata does not bar claims "based on facts not yet in existence at the time of the original action." *Drake v. F. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002); *see also Vlikonja v. Ashcroft*, 355 F. Supp. 2d 197, 201 (D.D.C. 2005). After all, the doctrine is intended to "prevent[] parties from raising" only those "issues that *could* have been raised and decided in a prior action." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp.*, 590 U.S. 405, 412 (2020) (emphasis added). In determining whether the facts in question existed at the time of the original suit, "the crucial date is the date the complaint was filed." *Vlikonja*, 355 F. Supp. 2d at 202 (citation modified) (quoting *Curtis v. Citibank*, N.A., 226 F.3d 133, 140 (2d Cir. 2000)). "[T]he plaintiff has no continuing obligation to filed

[2] Plaintiff's complaint leaves some uncertainty about whether this Court has diversity jurisdiction. But even if the Court lacks diversity jurisdiction, Plaintiff's spoliation claim shares a "nucleus of operative fact" with his Lanham Act claim, such that he "would ordinarily be expected to try them [together] in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see Chelsea Condo. Unit Owners Ass'n v. 1815 A. St., Condo. Grp.*, LLC, 468 F. Supp. 2d 136, 141 (D.D.C. 2007) (explaining that, for purposes of supplemental jurisdiction, "[a] common nucleus of operative facts exists when there is a link or overlap between the facts of the state and federal claims"); *cf. Medelius Rodriguez v. U.S. Citizenship & Immigr. Serv.*, 605 F. Supp. 2d 142, 147 (D.D.C. 2009) ("*Res judicata* bars a claim that *could have* been brought in a prior suit based on the same nucleus of facts, but was not." (emphasis added)). Because the Court is dismissing Plaintiff's only federal claim, the Court "has the discretion to exercise—or decline to exercise—supplemental jurisdiction over any state-law claims that remain." *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 190 (D.D.C. 2018) (emphasis omitted); *see also Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011). Guiding that discretion are "[g]eneral equitable factors . . . including judicial economy, convenience, fairness, and comity." *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 82 (D.D.C. 2016) (citation modified). Here, exercising supplemental jurisdiction over Plaintiff's spoliation claim promotes judicial economy and convenience because it eliminates the need for a remand to state or local court to resolve a simple legal question whether the allegations contained in Plaintiff's complaint, accepted as true, state a claim for reckless spoliation. That state claim does not "raise[] . . . [a] novel or complex issue of state law." 28 U.S.C. § 1367(c)(1).

amendments to the complaint to stay abreast of subsequent events; the plaintiff may simply bring a later suit on those later-arising claims." *Id.*

The basis of Nwoye's spoliation claim is Sidley Austin's alleged removal of four webpages: (1) an article on Sidley Austin's website that advertised and shared information about the Program; (2) an article from the Wall Street Journal titled "When Barack Met Michelle," (3) an article from the Washington Post titled "Law firms dominating campaign contributions to Obama," and (4) a final article on Sidley Austin's website titled "Sidley Defeats Motions Seeking to Block the Obama Presidential Center." Dkt. 1 at 7–8, 13–14 (Compl. ¶¶ 12, 25); *id.* at 17 (Compl. ¶¶37, 39). According to Nwoye, the webpages were "available and functional" at least through February 2, 2023, *id.* at 14 (Compl. ¶ 25), and were "altered" or "removed sometime in 2023," *id.* at 7 (Compl. ¶ 12). He filed his proposed second amended *Nwoye I* complaint on February 2, 2023, identifying those exact four pages as evidence he sought to rely on to prove that "all accolades and recognition [for Plaintiff's alleged contributions] went to Mr. Neil Horner and the Sidley Team" or to prove "the various fiduciary relationship [sic] that existed between" the Obamas and Sidley Austin, Dkt. 15-10 at 19, 25–26 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 15, 24). In other words, Nwoye was able to access the webpages at the time of filing his *Nwoye I* complaints, and they allegedly disappeared afterwards. Nwoye's subsequent filings in *Nwoye I* suggest that at least one of the pages disappeared by around June 2023. *See* Dkt. 15-13 at 12 n.4. Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in his favor, *see Twombly*, 550 U.S. at 555, the Court concludes that the factual basis for Plaintiff's spoliation claim—the removal of these four articles—arose after the *Nwoye I* complaints were filed and, as a result, his spoliation claim is premised on "later-arising" facts

and, accordingly, is not barred by res judicata. *Vlikonja*, 355 F. Supp. 2d at 202 (citation modified).

Although the claim is not precluded, Sidley Austin is correct that the claim fails as a matter of law. Dkt. 15-1 at 28. The parties agree that District of Columbia law applies to Nwoye's reckless spoliation claim. *See* Dkt. 1 at 17 (Compl. ¶ 36); Dkt. 15-1 at 28. The D.C. Court of Appeals identified a narrow cause of action for spoliation in *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998). But under D.C. law, a negligent or reckless spoliation of evidence claim "can be brought *only* against a third party," not a party in the underlying suit. *Cook v. Children's Nat'l Med. Ctr.*, 810 F. Supp. 2d 151, 157 (D.D.C. 2011); *see also Holmes*, 710 A.2d at 849 (explaining that the spoliation tort provides "independent legal protection against negligent or reckless spoliation of evidence" where "the already recognized remedy of permitting an adverse inference against the spoliator would serve no purpose" because the spoliator is not a party to the litigation). To state a claim for spoliation against a defendant who was a third party to a separate suit, a plaintiff must allege:

> (1) [the] existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential civil action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action.

*Holmes*, 710 A.2d at 854.

Here, Nwoye's reckless spoliation claim is difficult to parse. He contends that "[d]uring the pendency of [*Nwoye I*]," Sidley Austin "took steps to remove or completely alter publication relevant to establish the cause of action in [*Nwoye I*] and also in this sui generis action premised on Lanham Act." Dkt. 1 at 17 (Compl. ¶¶ 37, 39). To the extent

Plaintiff's reckless spoliation claim is based on Sidley Austin's alleged destruction of evidence that he believes would help prove his Lanham Act claim against it, no reckless spoliation claim can lie. Because Sidley Austin is the defendant in this action (which includes the Lanham Act claim), it is "the party to the underlying suit." *Holmes*, 710 A.2d at 848. The proper, and only, remedy against a defendant who destroys evidence pertinent to the very suit against it is "an instruction to the jury . . . permitting it to draw an adverse inference against the spoliator." *Cook*, 810 F. Supp. 2d at 157; *see Holmes*, 710 A.2d at 848. The reckless spoliation cause of action is not available against first-party spoliators.

Nwoye also asserts that Sidley Austin "began the process of taking down webpages and weblinks" while *Nwoye I* "was ongoing" and while it was "a third party" to the litigation. *See* Dkt. 17 at 26. Assuming without deciding that Sidley Austin could be construed as a "third party" to the *Nwoye I* claims against the Obamas, the Court concludes that Nwoye fails to meet several, if not all, of the remaining elements for reckless spoliation. He has not, and cannot, allege that *Nwoye I* had a "significant possibility of success if the [] evidence were still in existence" or that there was a "proximate relationship" between the webpages and his failed lawsuit when his complaint was dismissed because his claims were either time barred or failed as a matter of law. *Holmes*, 710 A.2d at 852; *see also* Dkt. 15-16. The dismissal of the operative complaint in *Nwoye I* and the denial of Nwoye's motion for leave to file his proposed second amended complaint did not depend, in any way, on Nwoye's ability to show that he failed to receive credit on Sidley Austin's promotional materials about the Program or that the Obamas and Sidley Austin had a fiduciary relationship, Dkt. 15-10 at 19, 25–26 (*Nwoye I* Prop. 2d Am. Compl. ¶¶ 15, 24). *See* Dkt. 15-16. Indeed, Plaintiff raised the since-removed webpages in his proposed second amended complaint. Dkt. 15-10 at 19, 25–26 (*Nwoye I* Prop. 2d Am. Compl.

¶¶ 15, 24). The availability—or unavailability—of those webpages had no bearing on the outcome. In a similar vein, moreover, Nwoye cannot contend that the alleged removal of these pages "significant[ly] impair[ed] [his] ability to *prove*" his case in *Nwoye I* when his complaint was unable to survive the pleading stage. *Holmes*, 710 A.2d at 854; *see also* Dkt. 15-16.

Nor does the pending complaint contain any allegations as to Sidley Austin's "contractual and legal duty" to maintain these identified webpages or weblinks during and after the pendency of *Nwoye I*, Dkt. 1 at 17 (Compl. ¶ 38), especially when two of the webpages were maintained by different entities (Wall Street Journal and Washington Post), *id.* at 13–14 (Compl. ¶ 25). There is no basis to infer that Sidley Austin had or has control over articles appearing on the websites of the Washington Post or the Wall Street Journal. As for the two remaining articles from Sidley Austin's website about the Program or its work defending the construction of the Obama Center, *see id.* at 7–8, 13–14 (Compl. ¶¶ 12, 25), Nwoye does not point to any court order or contract requiring Sidley Austin to maintain its own webpages indefinitely. Merely "referenc[ing] and list[ing]" the webpages "as potential . . . evidence in" *Nwoye I* does not create such a duty. Dkt. 17 at 26.

No set of facts consistent with Nwoye's complaint can support a spoliation claim against Sidley Austin. Accordingly, the Court will dismiss that claim with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("A dismissal with prejudice is warranted [] where a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (citation modified)).

### B. Motion for Sanctions

That leaves Sidley Austin's motion for sanctions, which seeks "a sanction of $15,000" to "offset a portion of the fees incurred in defending this suit." Dkt. 16-1 at 21. Sidley Austin

argues that sanctions are warranted for two reasons: First, Plaintiff sought to relitigate *Nwoye I*, despite knowing (and being advised before he brought suit) that his claims were "categorically precluded" by res judicata, *id.* at 16–20, and, second, in pre-suit correspondence, Nwoye threatened to report Sidley Austin to law enforcement and regulatory authorities if it did not comply with his demands and pay him $10 million, *id.* at 13–14; Dkt. 16-21 at 22–26.

Nwoye does not deny that he engaged in any of this conduct. *See* Dkt. 16-21 at 22–26 (copy of the demand letter); *id.* at 27–28 (copy of Sidley Austin's response to the demand letter, warning Nwoye that his claims were time barred). Instead, he requests that the Court "discount[] or attach little probative value to Page 2 to Page 9" of the motion for sanctions under Rule 403 of the Federal Rules of Evidence. Dkt. 19 at 9. He recycles his arguments regarding the inapplicability of res judicata because Defendant "was never a party at any point" in *Nwoye I*. *Id.* at 11; *see also id.* at 10–17. He alleges that attorneys at Sidley Austin "profusely apologi[zed]" on a pre-suit phone call with him and agreed to pay his filing fees for the present action, and he asks the Court to treat this as "an admission of culpability for" the Lanham Act and spoliation claims under Federal Rules of Evidence 801(d)(2)(B), (C), and (D). *Id.* at 18–19. Finally, Nwoye asserts that he is, in fact, entitled to attorneys' fees of $7,500 as a sanction against Sidley Austin because he has been forced to "defend against [an] improper Rule 11" motion. *Id.* at 28–29.

As an initial matter, the Court summarily denies Nwoye's request for attorneys' fees; he is not a prevailing party, and Sidley Austin has done nothing wrong in this litigation. Sidley Austin's motion, in contrast, presents a more difficult question. Most notably, the Court is troubled by Nwoye's threat to report Sidley Austin "to law enforcement authorities" if it declines to "accede" to his demands, including (apparently) his demand for a payment of $10 million.

Dkt. 16-21 at 26. It is not difficult to understand how Sidley Austin would perceive this threat as evidence that this lawsuit was brought for improper and harassing purposes. See Fed. R. Civ. P. 11(b)(1). For now, however, the Court will simply attribute Nwoye's intemperate remark to aberrant (and perhaps delusional) thinking. The fact that he threatened to report Sidley Austin to the Securities and Exchange Commission, among other "authorities," suggests as much. But the Court also cautions Nwoye that, going forward, it will not tolerate threats of this nature and will, if necessary, impose significant sanctions.

With respect to Sidley Austin's alternative argument, which notes that Nwoye was forewarned that his complaint was barred by res judicata, the Court simply notes that the law firm's prediction was only partially correct. To be sure, both of Nwoye's claims not only fail but border on the frivolous. "The Court," however, "must also take into consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged violations may have had on judicial proceedings." *Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009) (citation modified). Moreover, although Rule 11 sanctions can be imposed against *pro se* litigants, *see Smith v. Scalia*, 44 F. Supp. 3d 28, 45 (D.D.C. 2014), "such litigants are held to a 'more lenient standard than professional counsel,'" *Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 98 (D.D.C. 2016) (quoting Tracy Bateman Farrell & John R. Kennel, *Federal Procedure, Lawyers Edition* § 62:771 (2015)).

Defendant argues that because Plaintiff has an LL.M. degree from NYU and because he is a licensed Nigerian legal practitioner, Plaintiff should not receive the leniency typically afforded to *pro se* litigants. Dkt. 16-1 at 15–16; *see also* Fed. R. Civ. P. 11 Adv. Comm. Notes (1993) (noting that a court may consider whether the responsible person is "trained in the law"). Although Plaintiff repeatedly touts his experience as a "Nigerian Qualified Legal Practitioner,"

*see generally* Dkt. 1 (Compl.), the Court is not persuaded that it should hold Plaintiff to the same pleading standards as an attorney who has received three years of legal training at a U.S.-based law school and who has been admitted to practice law in the United States, especially in the context of taking the extraordinary step of imposing Rule 11 sanctions. *See, e.g.*, *Stankevich*, 156 F. Supp. 3d at 98 (stating that *pro se* litigant, who had recently graduated from a U.S.-based law school but was not licensed to practice in the district, "cannot be held to the same standard as a lawyer licensed to practice in Washington D.C." in considering Rule 11 sanctions); *Verduzco v. U.S. Dep't of Just.*, No. 24-cv-2245, 2026 WL 1662669, at *2 n.2 (D.D.C. June 9, 2026) (treating the plaintiff's pleadings with more leniency because although she was "a [l]aw [s]chool graduate," she was "not a barred attorney" and "cannot be held to the same standard as a [licensed] attorney" (alterations in original) (quoting *Stankevich*, 156 F. Supp. 3d at 98)); *Stewart v. Musk*, No. 25-cv-377509, 2026 WL 377509, at *3 n.3 (D.D.C. Feb 11, 2026) (extending liberal pleading standards to a plaintiff who "graduated from law school" because there is "no evidence" that the plaintiff had "ever practiced law or been licensed to do so").

Although Sidley Austin correctly notes that courts have, at times, sanctioned pro se litigants who engage in repetitive and vexation litigation, *see generally* Dkt. 16-1 at 15, the Court concludes that Nwoye's conduct—at least to date—has not been so egregious as to warrant sanctions. The Court has already decided to dismiss Nwoye's complaint with prejudice, which should put an end to this chapter. If it does not, Sidley Austin is free to return to the Court and to seek appropriate sanctions, including financial sanctions and/or an order barring Nwoye from filing future, repetitive and vexatious pleadings.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss, *see* Dkt. 15, will **DENY** Defendant's motion for sanctions pursuant to Rule 11, *see* Dkt. 16, and will **DISMISS** Plaintiff's complaint with prejudice.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 30, 2026